13 CV 3499 (AJN)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK CITY DEPARTMENT OF EDUCATION,

Plaintiff,

- against -

S.H. BY HIS PARENTS, D.H. AND A.B.,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Plaintiff*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: M. Richter*
*Tel: (212) 356-2083*
*Matter No.*

## PRELIMINARY STATEMENT

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 1331. Plaintiff asserts that the Court does have subject matter jurisdiction to decide the issues raised in the complaint, specifically: whether defendant S.H. was entitled to receive a free and appropriate public education from plaintiff pursuant to the Individuals with Disabilities Education Improvement Act ("the IDEA"), 20 U.S.C. § 1400, *et seq.;* whether defendant A.B. and/or defendant D.H. failed to provide plaintiff and the administrative adjudicators with their correct residential address(es), which deprived plaintiff of its procedural rights under the IDEA; and whether the decision of the State Review Officer ("the SRO") deprived plaintiff of its procedural rights under the IDEA.

## STATEMENT OF FACTS

Defendants' papers in support of their motion to dismiss, which consist of the affidavit of defendant D.H., who is the father of S.H., and defendants' supporting memorandum of law, are filled with overheated rhetoric., including the statement that plaintiff is making a "desperate attempt to *provoke* this Court into retaining jurisdiction…based on statements that are demonstrably false" [emphasis in original][1] (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction (hereafter "Def MOL"), p. 1).

The statements in the complaint concerning defendants' residence reference defendants' own statements concerning their residence, most of which were made under oath and submitted

---

[1] This statement may be an implicit reference to the decision in *New York City Department of Education v. C.F., by his parents G.F. and R.F,* 12-CV-03188 (S.D.N.Y. June 20, 2013), which was dismissed for lack of subject matter jurisdiction. Not only was this case commenced prior to that decision, but the primary issues here are different.

Continued…

to government agencies. These statements provide contradictory information concerning defendants' residence. Accordingly, it is some of defendants' sworn statements that must be "demonstrably false." As evidenced below, defendants' motion to dismiss does not provide any explanations for their contradictory sworn statements.

A.B. and D.H. Represent to DOE that __ E. 69th Street Is their Residence

On May 17, 2011, Defendants A.B. and D.H. informed DOE that they and S.H. resided at __ E. 69th Street, New York, N.Y,[2] as shown on the Individualized Educational Program for S.H., which is submitted as Exhibit "B" to the D.H. Affidavit in support of the motion to dismiss (hereafter "DH Aff" or "D.H. Affidavit".) The D.H. Affidavit provides additional details. D.H. states that he and A.B. have lived together at the __ E. 69th Street address since they were married in 2004, and subsequently have continued to live at that address with their children. (DH Aff ¶ 14). D.H. further states that he has not lived at __ Road, Scarsdale since 1991, when he graduated from law school. (DH Aff ¶ 13).

A.B. and D.H. Provide Contradictory Sworn Statements of Residence at Multiple Addresses in New York City and Westchester County

At the outset, the November 6, 2012 Board of Elections affidavits of A.B. and D.H. explicitly contradict the representation made to DOE (and to the administrative decisionmakers) that A.B. and D.H. reside at __ E. 69th Street. In these affidavits, each defendant did list the __ E. 69th Street address, and stated under oath that this is a *mailing address*, and provided a different residential address (A.B.'s residential address is __ E. 65th Street and D.H.'s residential

---

[2] To maintain confidentiality for S.H., the defendants are identified throughout by their initials, and the full street addresses cited are partially deleted. Defendants have employed the same procedure in their motion papers.

address is _ Road, Scarsdale). (See Exhibits "1" and "2," to the Declaration of Marilyn Richter, dated September 6, 2013 (hereafter "Richter Decl"), which are certified voting history records of A.B. and D.H., respectively and are submitted under seal). These affidavits also explicitly contradict the D.H. Affidavit, which states that A.B. and D.H. have resided together continuously at the __ E. 69th Street address since 2004. Defendants have provided no explanation whatsoever regarding their sworn statements that E. 69th Street is a mailing address, not a residence address, even though these statements are referenced in the complaint. (Compl ¶¶ 24, 27).

As discussed more fully below, defendants' conflicting sworn statements and other questions involving defendants' residency, and their effect on the parties' obligations and rights under the IDEA, warrant denial of defendants' motion to dismiss.

Evidence of A.B.'s Residence

As referenced in the complaint (Compl ¶27), defendant A.B., the mother of S.H., stated under oath, in a New York City Board of Elections affidavit, dated November 6, 2012, that she lived at ___ E. 65th Street, New York, N.Y. 10069; that she was registered to vote from this E. 65th Street address; and that she had moved to this address within 3 years. A.B.'s voting history record, certified by the New York City Board of Elections, includes her November 6, 2012 affidavit, and contains additional information that is consistent with the statements in A.B.'s affidavit. The voting history record shows that the __ E. 65th Street address has been A.B.'s residence address since February 23, 2010. (Exhibit "1" to the "Richter Decl).

A.B. has submitted no response in support of defendants' motion to dismiss. D.H.'s entire response concerning A.B.'s Board of Elections affidavit states: "I don't know what my wife submitted in connection with her own voting (or even if she even [sic] voted that day)…."

(DH Aff ¶ 14). That D.H., who is a lawyer, and submitted a seven-page affidavit and dozens of pages of exhibits concerning residency in support of defendants' motion to dismiss, never asked A.B. about her Board of Elections affidavit seems incredible, and taken together with A.B.'s failure to respond, is telling.

Evidence of D.H.'s Residence

Similar contradictory statements, also made under oath, exist in two affidavits submitted by D.H. to the Board of Elections. On Election Day, November 6, 2012, D.H. submitted an affidavit stating that he resided at __ Road, Scarsdale, New York. On the very next day, November 7, 2012, D.H. swore in another affidavit that he resided at ___E. 69th Street, New York, N.Y.

D.H.'s November 6 and November 7, 2012 Board of Elections affidavits are referenced in the complaint. (Compl ¶¶ 24, 25). D.H.'s sole response in Defendants' motion states:

> November 6, 2012 (election day) capped a week of significant confusion. The devastation of Hurricane Sandy had occurred only days earlier and radio reports were telling people that they could vote from "other" locations. *I don't know what papers I had to sign,* but I voted once and only once, in Manhattan, at a polling facility near the Hilton Hotel. [emphasis added].

(DH Aff ¶ 14).

Due to Storm Sandy, registered voters who resided in designated New York State counties, including Westchester County and the five counties in New York City, were allowed to cast their ballots at polling sites other than their regular polling site. Voters who utilized this procedure were required to cast their vote by affidavit ballot, which were then transmitted by the board of elections where the ballot was cast, to the board of elections where the voter resides and is registered to vote. (See, Executive Order of Governor Andrew Cuomo and accompanying press release, Exhibit "4" to the Richter Decl).

In accordance with this procedure, D.H. submitted his November 6, 2012 affidavit, swearing that he resided at __ Road, Scarsdale, New York. This affidavit was then forwarded to the Westchester County Board of Elections, where it became part of D.H.'s voting history record. (The Westchester County certified voting history record for D.H., is submitted under seal as Exhibit "2" to the Richter Decl).

D.H.'s certified voting history record shows that prior to November 7, 2012, he was registered to vote in Westchester County for many years, based on his declared residence at __ Road, Scarsdale. Of particular relevance, D.H. voted in 2004 and 2008 as a Westchester County resident, based on his Scarsdale residence, during the period that he now claims he was residing at __E. 69th Street.

D.H.'s certified voting history record from the New York City Board of Elections, which contains his November 7, 2012 affidavit, shows that D.H. has never voted as a resident of New York City. (The New York City certified voting history record for D.H., is submitted under seal as Exhibit "3" to the Richter Decl).

D.H.'s driver's license also states that he resides at __ Road, Scarsdale. D.H. does acknowledge this, in a footnote (DH Affidavit ¶ 14). D.H. states: "I have not yet changed my New York driver's license to reflect our East 69th Street address residence." There is no explanation offered. Based on the D.H. Affidavit, which states that D.H. first received his driver's license while living at __ Road, Scarsdale, before he moved from Scarsdale in 1991 (DH Aff ¶ 13), D.H. has maintained his residential address as __ Road, Scarsdale, N.Y. on his driver's license for *twenty-two years*, (from 1991 to 2013) after he claims to have moved from that address. Pursuant to N.Y. Veh. & Traf. Law § 505(5), the New York State Department of Motor

Vehicles ("the DMV") requires that a holder of a New York State driver's license notify the DMV within a maximum of ten days of a change of address.

D.H.'s statement that "he has not yet changed his driver's license" to reflect his East 69th Street residence, implies that he merely neglected to amend an existing driver's license. If that were the case, it would be problematic enough, given that this failure continued for twenty-two years, and the law requires D.H. to notify the DMV of a residence change within ten days.

However, that is not what happened. The maintenance of the __ Road, Scarsdale, N.Y. residential address on D.H.'s driver's license for twenty-two years, required repeated, affirmative, certified statements by D.H., submitted to the DMV, that he resided at __ Road, Scarsdale, N.Y.

New York State driver's licenses must be renewed periodically. The current requirement is that licenses be renewed every eight years. http://www.dmv.ny.gov/licrenew.htm. In connection with driver's license renewals, the license holder must complete and submit a form to the DMV, providing then-current information, including current residence. The license holder must sign the form, certifying that the information provided is correct. (A copy of the current DMV form for license renewal is annexed as Exhibit "5" to the Richter Decl).

Accordingly, in the twenty-two year period from 1991 to 2013, on multiple occasions, D.H. has certified, on a form submitted to the DMV, that he resides at __ Road, Scarsdale, New York. D.H. fails to offer any explanation as to why he has continued to certify to the DMV that he resides at __ Road, Scarsdale, New York, when he now claims that he has not resided at that address since 1991.

A.B. and D.H. Cannot Claim Ignorance as an Excuse for Their Conflicting Statements

A.B. and D.H. cannot plausibly claim ignorance regarding the significance of failing to provide accurate residency information on these government forms. A review of Exhibits "1," "2," "3" show that the affidavit forms that were filled out and signed by A.B. and D.H. contain a clear warning, above the signature line, that the signer is swearing or affirming to the truth of the information provided in the affidavit, and that if the information is not true, the signer may be subject to penalties upon conviction of up to four years in jail. The DMV form that is used for license renewals bears a similar prominent statement, warning that providing false information may be a misdemeanor or a felony. (See Exhibit "5.")

A.B. is a physician, and most significantly, D.H. is a lawyer. Clearly they knew that they were required to provide accurate information concerning their residence address when they completed these affidavits and certifications, and that a failure to do so may subject an individual to criminal penalties. The sworn and certified statements by A.B., that she resides at __ East 65th Street, and by D.H., that he resides at __ Road, Scarsdale, were made on multiple occasions. A.B. submitted these statements to the Board of Elections on at least two occasions (in February 2010 when she changed her residence and in November 2012 when she voted). D.H. submitted these statements to both the DMV and the Westchester County Board of Elections on several occasions (in addition to his November 6, 2012 affidavit, D.H.'s certified Westchester voting history record, Exhibit "2," shows that D.H. voted by absentee ballot in some past elections; voting by absentee ballot requires the voter to provide his residential address). Accordingly, these repeated sworn assertions of residence at __East 65th Street and __ Road, Scarsdale, together with the sworn assertions by both A.B. and D.H., that the __E. 69th Street address is a

mailing address, are entitled to great weight. Clearly they cannot simply be ignored, as defendants do in their motion to dismiss.

Bank Accounts

In addition to their sworn statements, defendants' personal bank accounts provide additional evidence that defendants, or at least D.H., reside at the __ Road, Scarsdale address. Exhibit "6" to the Richter Declaration, submitted under seal, shows checks drawn on two bank accounts – an account in the name of D.H., and an account in the name of A.B. The A.B. account contains no pre-printed residential address. The D.H. account bears the pre-printed address of __ Road, Scarsdale, N.Y. under D.H.'s pre-printed name. Thus, D.H. continues to use personal checks bearing the Scarsdale address, twenty-two years after he claims to have moved from that address.

Size of Apartment

In the D.H. Affidavit, defendant asserts that he and A.B. have lived in the same apartment since they were married in 2004. (DH Aff ¶ 14). Upon information and belief, this is a two-bedroom apartment. While this would be comfortable for a married couple, defendants now have four children, who D.H. claims reside with them. During the 2011-2012 period, defendants had three children. Given D.H. and A.B.'s financial circumstances, as shown by their tax returns, it seems surprising, and not typical, that a family of six or even five, would continue to reside in a two-bedroom apartment. Depending on the business operations (discussed below) conducted by A.B. in the apartment, it may be even less likely that a family of five or six would reside in a two-bedroom apartment where the mother is also operating a business.

The Documents and Information Provided by Defendants in Support of Their Motion Do Not Establish That ___ E. 69th Street Is Their Family Residence

Defendants have submitted self-selected portions of tax returns, which show that they certified to the tax authorities that they reside at __ E. 69th Street. From the documents provided,

it appears that they filed joint returns in at least two years. These certifications are not consistent with the certification and affidavits submitted to the Boards of Elections and to the DMV. The D.H. Affidavit asserts that he and A.B. have resided continuously together at __ E. 69th Street since 2004 and that he has not resided at __ Road, Scarsdale since 1991, but fails to address his and A.B.'s sworn statements to the contrary. All that is certain is that A.B. and D.H. have made numerous contradictory, sworn and certified statements concerning their residency. Based on these conflicting sworn and certified statements, it is not clear where A.B., D.H. or S.H. resides.

The tax returns also show that A.B. operates a business from the __E. 69th Street apartment. The business, in which she is self-employed, is A__B___MD PLLC, and the address for this business is reported as the E. 69th Street address on defendants' tax returns. A.B. is an ophthalmologist. Switchboard.com lists two addresses for A__ B__ PLLC -- the E. 69th Street address and the __ E. 65th Street address that A.B. reported as her residence to the Board of Elections.

Other documents submitted by defendants, show that D.H. has paid bills in connection with the __ E. 69th Street apartment. It is not disputed that defendants may have access to and use of the apartment. However, these records do not show who, if anyone, actually resides in this apartment. While the payment of utility bills can be am indicia of residency, in the circumstances here, where there is so much contradictory and conflicting evidence, far more information is required before any conclusions can be drawn. D.H.'s payment of these bills, is certainly not an indicia of A.B.'s residence, which she has stated under oath is at __ E. 65th Street. Further, such payments by D.H., as well as the payments for telephone and cable service, would be consistent with the use of __ E. 69th Street for other purposes. Defendants have stated under oath that E. 69th Street is used as a mailing address and for a business. The use of the

apartment as a mailing address would be consistent with the operation of a business at the address.

The credit card statements showing purchases on the Upper East Side, also do not show residency at the __ E. 69th Street address. A.B. has sworn that she resides at a different Upper East Side address, on E. 65th Street, only a few blocks from the __ E. 69th Street address. Purchases made on the Upper East Side are also consistent with the use of the __ E. 69th Street address as D.H. and A.B.'s mailing address, and/or as a business address, which would likely entail frequent visits to that address.[3]

Finally, the real estate tax bills for the __ Road, Scarsdale address do not clarify defendants' residency. They show that the taxes were billed to someone other than D.H., who asserts that this home is owned by his parents. That does not preclude D.H.'s residence at that address, whether or not his parents also reside there. To maintain confidentiality, no citation will be offered, but real estate websites show this to be a large home.

Issues Concerning Residency Were Not Apparent During the IHO and SRO Proceedings

Defendants seek to emphasize that DOE did not present the information concerning defendants' residency to the impartial hearing officer ("the IHO") and to the State Review Officer ("the SRO") during the underlying administrative proceedings. As set out in the declaration of DOE attorney Jessica C. Darpino, dated September 4, 2013 (hereafter "Darpino

---

[3] The statement of the doorman at __ E. 69th Street, to DOE's process server, that he had not seen either A.B. or D.H. in a couple of days, that were during the middle of a school week, would also be consistent with the use of the apartment as a mailing and/or business address, rather than a residence. Similarly, the process server attempted to personally serve defendants three times in two days during the same school week.; each time he was told they were not there.

declaration"), submitted in support of plaintiff's opposition to defendants' motion, defendants had no knowledge of this information at the time of the administrative proceedings.

Defendants had represented to the DOE that they and S.H. resided at the __ E. 69th Street address, as shown on page 1 of the Individualized Educational Program for S.H. (Exhibit "B" to the D.H. Affidavit.) DOE had no reason to doubt this representation at the time of the administrative proceedings. The only information concerning a different address that was known to DOE at that time was the pre-printed listing of the __ Road, Scarsdale address on D.H.'s checks.

However, as explained in the Darpino declaration, in DOE's experience processing requests for reimbursement, DOE reviews many personal checks submitted by parents as proof of payment. Based on this experience, it is not unusual for families to have two homes, a primary residence and a second home. It was unremarkable that the family may have maintained a second home at the Scarsdale address printed on D.H.'s checks. (Darpino declaration, ¶¶ 3-7).

It was only after the doorman made his remark to the process server about not having seen either A.B. or D.H. in a couple of days, in connection with the inability to personally serve defendants at the __ E. 69th Street address, that a question arose as to defendants' residence. The remark was made on a Wednesday, during a school week, when it would be expected that one or both parents of young school-age children would normally be at home. The doorman's statement was consistent with the process server's experience; neither A.B. nor D.H. was home when three attempts were made over two days to personally serve them. While the doorman's statement and the process server's unsuccessful service attempts were reported in DOE's reply papers submitted to the SRO, no additional information concerning residency was then known. (Darpino declaration, ¶¶ 9-12).

The documents containing the conflicting sworn statements regarding defendants' residency were discovered in the course of DOE's subsequent investigation of defendants' residency. As described in the Darpino declaration (¶¶ 14-15), as part of this investigation DOE had investigators conduct field observations that included observations at all three addresses that have been provided by defendants as their residence addresses – the Scarsdale, E. 69th Street, and E. 65th Street addresses. The observations were made on school days, during the morning hours when children leave home to go to school. Observations were made on more than one morning, at each of the three locations. It was reported that no boy was observed, of the approximate age of S.H., leaving any of the three locations in the company of an adult during these morning hours.

Defendants, who have submitted multiple conflicting sworn statements as to their residences to various government agencies, now take the position that DOE should have discovered defendants' contradictory sworn statements sooner, and that having not discovered them sooner, DOE should be barred from having these contradictory statements considered now, and should be barred from obtaining further information to resolve these contradictions and ascertain where A.B., D.H. and S.H. reside. DOE has no obligation to investigate each parent's statement of residency, and properly assumes that the information parents provide to DOE concerning their residency is accurate, unless and until information is acquired that suggests otherwise. Defendants' position is simply untenable.

## ARGUMENT

## APPLICABLE STANDARD UNDER 28 U.S.C. § 1331

A plaintiff properly invokes federal-question jurisdiction under 28 U.S.C. § 1331, when it pleads a colorable claim "arising under" the Constitution or laws of the United States. A claim

invoking federal-question jurisdiction "may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' [quoting *Bell v. Hood*, 327 U.S. 678 (1946)] 327 U.S., at 682-683, 66 S. Ct. 773, 90 L. Ed. 939; see Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, n.10 (2006).

## POINT I

**UNDER THE IDEA, A LOCAL EDUCATIONAL AGENCY, IS ONLY RESPONSIBLE FOR PROVIDING A FREE AND APPROPRIATE PUBLIC EDUCATION TO STUDENTS WITH A DISABILITY WHO RESIDE IN ITS JURISDICTION. THE COURT HAS SUBJECT MATTER JURISDICTION TO DETERMINE THE THRESHOLD ISSUE OF WHETHER DOE HAS ANY OBLIGATION ARISING UNDER THE IDEA, TO S.H.**

The Individuals with Disabilities Education Improvement Act ("the IDEA"), 20 U.S.C. § 1400, *et seq.* requires that a local educational agency ("an LEA") provide a free appropriate public education ("FAPE") to students residing in the school district served by the LEA, who have been classified as students with disabilities. 20 U.S.C. §§ 1412(a), 1414(d)(4). The school district served by plaintiff, the New York City Department of Education, is the City School District of the City of New York. N.Y. Education Law § 2590-a(1). DOE is required to provide a free appropriate public education ("FAPE") to students residing in New York City who have been classified as students with disabilities. 20 U.S.C. §§ 1412(a), 1414(d)(4), N.Y. Education Law 4402(1)(d)(2); *M.H. v. New York City Dep't. of Education,* 685 F.3d 217, 225, n.4 (2d Cir. 2012).

Residency determines whether a school district has a financial obligation for the education of a student under the IDEA. In *Catlin v. Sobol*, 93 F.3d 1112, 1122 (2d Cir. 1996), a

case involving a residential placement, the Second Circuit examined the IDEA statute and regulations, and several opinions of the Office of Special Education of the United States Department of Education ("the U.S. DOE"), and concluded that the IDEA established a standard, which is that "the child's residence is that of his parents, and the parents' district is responsible for funding the child's education." In a subsequent March 17, 2005 Memorandum from the Office of Special Education Programs of the U.S. Department of Education to State Directors of Special Education, that Office opined that while the Department had traditionally considered the parent's residence to be controlling, if state law specifically addressed residency then state law would apply. The Memorandum also states that local residency would be determined as a matter of state law, policy and practice. A copy of the March 17, 2005 Memorandum is annexed hereto as Appendix "A." It should be noted that both *Catlin* and the Memorandum address residential placements, where the child is living at the placement, rather than with his parents.

A more recent case, that presents a factual situation closer to that here is *Brooks v. Cent. Dauphin Sch. Dist.*, 2011 U.S. Dist. LEXIS 107609, 23* (M.D. Pa. Aug. 31, 2011), *adopted* 2011 U.S. Dist. LEXIS 108808 (M.D. Pa. Sept. 21, 2011), "the IDEA only requires a school district to make a FAPE available to a child residing within its district. *See L.G. Wissahickon School Dist.*, 2011 U.S. Dist. LEXIS 476, *9, 2011 WL 13572, *11."

In *Brooks,* plaintiff claimed that the defendant school board was required to educate her children, one of whom had been classified as a child with a disability. While plaintiff and her children resided outside the boundaries of the school district, the children's grandmother lived in, and owned property within the school district. The Court held:

> Moreover, we do not find that this Court has any basis to direct Defendant CDSD to enroll Plaintiff's children as students who do not appear to reside in CDSD. Defendant CDSD is not required to educate Plaintiff's children and it does not receive any funding

> from either the federal or state government to educate student living outside of its boundaries. *See R.T. ex rel. J.S. v. Southeastern York County School Dist.*, 2007 U.S. Dist. LEXIS 12649, *12, 2007 WL 626056, *4 (M.D. Pa. 2-23-07). The law is clear as the Court stated in *R.T. ex rel. J.S. v. Southeastern York County School Dist.*, 2007 U.S. Dist. LEXIS 12649, *11, 2007 WL 626056, *4.

*Id.,* 2011 U.S. Dist. LEXIS 107609, at *22.

It should be noted that while state law is referenced in determining residency issues in some of the District Court decisions cited in the above quotation from *Brooks*, the district courts At this time it is not known where A.B. and D.H. reside, or whether A.B. and D.H. reside together or separately. They have provided different residence addresses under oath. If they do reside together with S.H. in either Westchester County or New York City, the residency question is settled. If however, A.B. and D.H. do not reside together, and one resides in Westchester and the other in New York City, then the residency questions could become more complicated. Plaintiff should be given an opportunity to determine, through discovery, where defendants reside, to ascertain whether they have any obligations to provide FAPE to S.H.

This is a threshold issue. It is not an issue, as in *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730 (2d Cir. 2007), where a right is protected (and an obligation created) solely by state law. The issue here is whether plaintiff has any obligations whatsoever to defendants under the IDEA.

Nor is this an issue, as in *New York City Department of Education v. C.F. by his Parents G.F. and R.F.*, *supra*, where the Court found the issue must be decided solely under state law. The discussion in Point I, above, demonstrates that the courts and the U.S. Department of Education have looked to standards in both the IDEA and State law to determine whether the IDEA imposes obligations upon a local educational agency concerning a particular student.

## POINT II

**IF DEFENDANTS FAILED TO NOTIFY PLAINTIFF OF THEIR RESIDENTIAL ADDRESS THIS PREVENTED DOE FROM PERSONALLY SERVING ITS ADMINISTRATIVE APPEAL WITHIN 35 DAYS OF THE DATE OF THE HEARING DECISION, AND RESULTED IN DISMISSAL OF DOE'S ADMINISTRATIVE APPEAL AS UNTIMELY. DEFENDANTS WERE OBLIGATED TO PROVIDE DOE WITH THEIR RESIDENCE ADDRESS, WHERE THEY COULD BE PERSONALLY SERVED, AND DOE SHOULD NOT BE DEPRIVED OF ITS IDEA RIGHTS TO AN ADMINISTRATIVE APPEAL AND JUDICIAL REVIEW ON THE MERITS, BASED ON DEFENDANTS' FAILURE. THE COURT HAS SUBJECT MATTER JURISDICTION OF THIS ISSUE.**

The IDEA, 20 U.S.C. § 1415, provides that both the parents and the local educational agency are entitled to access an administrative process to resolve disputes concerning the identification, placement, etc. of a child with a disability. Any party also has the right to judicial review of the administrative determination, in either federal or state court.

Pursuant to 20 U.S.C. § 1415(f)(g), New York State has adopted a two-tier administrative process. There is a hearing before an IHO. Any party aggrieved by the IHO's decision, may appeal that decision to the SRO. New York State has adopted regulations that are applicable to these administrative proceedings. The relevant State regulation, at 8 NYCRR § 279.2(c), states:

> (c) A notice of intention to seek review shall not be required when the board of education initiates an appeal from an impartial hearing officer's decision. A copy of the board's notice of petition, petition, memorandum of law and any additional documentary evidence *shall be personally served* upon the parent within 35 days from the date of the impartial hearing officer's decision. If the decision has been served by mail upon the board, the date of mailing and the four days subsequent thereto shall be excluded in computing the 35-day period. [emphasis added].

Personal service on a board of education can easily be made by parents, simply by serving the appeal papers at a designated office. Personal service on parents requires that they provide the board of education with their correct residential address. Here, D.H. and A.B. provided DOE an address, at __ E. 69th Street, that they have sworn in submissions to other government agencies was a mailing address, and that they resided at different addresses. Defendants never informed DOE of these different residential addresses.

DOE attempted to make personal service on defendants at the __E. 69th Street address provided by petitioners twice on the date that was 35 days after the date of the IHO decision. Both times, the process server was informed by the doorman that nobody was home. A third attempt to make personal service the next day (which was 35 days from the date of receipt of the IHO decision), also failed because nobody was home. The doorman told the process server that he had not seen either defendant for a couple of days. This was surprising because the service attempts were made on school days, and it is expected that one or both parents normally would be at home with young school-age children

DOE received the SRO's permission to make substituted service on defendants after these three failed attempts to personally serve the appeal papers. DOE's appeal petition and accompanying papers did not describe these circumstances because they had not occurred when these initial papers had been prepared. DOE did describe the multiple unsuccessful attempts to make personal service and the doorman's statement, in its reply papers on the appeal. However, at the time, DOE was not aware that defendants had sworn to other government agencies that they resided elsewhere. Accordingly, the SRO, like DOE, was unaware of these issues concerning defendants' residential address(es).

If defendants failed, as appears likely, to provide the requisite information that would enable DOE to make personal service, that is particularly egregious in the circumstances here. DOE had informed defendants' counsel in the administrative hearing that it intended to appeal, approximately three weeks before the appeal deadline, and had verified with a paralegal in counsel's office that the __E. 69th Street address was the most current address counsel had for defendants. Although counsel indicated that he had not then be retained to represent defendants on an appeal, it can be safely assumed that he subsequently notified defendants of DOE's intention to appeal. Defendant D.H. is a lawyer. If defendants did not want to provide plaintiff with their residence address(es) they could have authorized counsel to accept service for them. Defendants instead did nothing.

If defendants failed to provide correct residence information to DOE, then defendants' conduct denied DOE its IDEA rights, pursuant to 20 U.S.C. § 1415, to meaningfully take an administrative appeal and to seek judicial review. Defendants castigate DOE for not attempting service before the 35th day after the date of the IHO decision. That attempt at blame shifting should fail. DOE is not required to attempt service days before the deadline; however, defendants are required to provide accurate information that will allow service of the appeal..

The federal courts recognize that circumstances such as these likely constitute good cause for the exercise of discretion to permit late service of process. As one leading treatise explains:

> [G]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis. Pro se status or any of the other listed explanations for a failure to make timely

> service, however, is not automatically enough to constitute good cause for purposes of [Federal Rule of Civil Procedure] 4(m)....].

4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (3d ed. 2002).

In this case it appears, based on the contradictory sworn statements regarding their residence address, and the other information discussed above, that defendants engaged in misleading conduct and evaded service of process, by failing to provide plaintiff with a residential address(es) where personal service could be made. These circumstances would constitute good cause under the federal standard. Here, however, the SRO was not provided with all the relevant information upon which to base a good cause determination, because it was not known at the time to plaintiff. Again, there is significant evidence that this may be so. If defendants do not reside at the address they provided to DOE, and the regulations require personal service upon defendants to commence an administrative appeal, then defendants misled plaintiff, and effectively evaded service of process.

The Court does have subject matter jurisdiction over this claim. It was defendants' responsibility to provide accurate information concerning their residence, and if they failed to do so, they deprived DOE of an opportunity to meaningfully exhaust its administrative remedies and obtain judicial review under the IDEA. 20 U.S.C. § 1415. This is not a circumstance, such as that presented in *Bay Shore*, where only a claim arising under state law would be affected by adjudication. Nor is this a circumstance where the Court must look solely to state law, as the Court held was the case in *C.F.* If the Court were to find that defendants' conduct deprived plaintiff of its IDEA rights pursuant to 20 U.S.C. § 1415, the Court could remand to the SRO for an administrative appeal determination on the merits.

Plaintiff believes the appropriate remedy here is to permit discovery concerning defendants' residence, so that an informed decision can be made as to where defendants reside. If defendants reside outside the City, then as discussed above, DOE is not responsible for providing a FAPE to S.H. under the IDEA. If defendants reside in the City, but at an address or addresses other than __E. 69th Street, then good cause will have been shown for the one-day late filing (assuming *arguendo* that it was one-day late). In that circumstance, plaintiff submits that the appropriate remedy would be a remand to the SRO for a determination on the merits.

**POINT III**

**THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE CLAIM THAT THE SRO'S DECISION, DISMISSING THE APPEAL, WAS ARBITRARY AND CAPRICIOUS AND AN ABUSE OF DISCRETION.**

Finally, the complaint asserts that the decision of the SRO, dismissing the administrative appeal for being one-day late, was arbitrary and capricious and an abuse of discretion. Plaintiff acknowledges that this Court's recent decision in *C.F.* , issued after the complaint here was filed, would be applicable to this claim. Plaintiff respectfully disagrees with the Court's decision in *C.F.* for the reasons stated in its submissions in that case,

<u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that defendants' motion to dismiss the complaint be denied, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 6, 2013

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff New York City Department of Education
100 Church Street, Room 2-180
New York, N.Y. 10007
(212) 356-2083, Fax: (212) 788-0940
mrichter@law.nyc.gov

By: Marilyn Richter
Marilyn Richter
Assistant Corporation Counsel