UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

THE NEW YORK CITY DEPARTMENT OF EDUCATION,

Plaintiff,

- against -

S.H., by his parents, D.H. and A.B.,

Defendants.

-----------------------------------------------------------------------x

DECLARATION
Index No.: 13-CV-3499 (AJN)

Marilyn Richter declares, pursuant to 28 U.S.C. § 1746:

1. I am an Assistant Corporation Counsel in the Office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for plaintiff the New York City Department of Education ("DOE"). I am assigned to this case, and submit this declaration in support of plaintiff's opposition to defendants' motion to dismiss on the basis of lack of subject matter jurisdiction.

Defendants' Conflicting Sworn and Certified Statements Concerning Their Residency

2. In the affidavit of defendant D.H., sworn to July 12, 2013, and submitted in support of defendants' motion to dismiss ("DH Aff"), D.H. states that he has not lived in the house at ___ Road in Scarsdale, N.Y. "since 1991, when I moved into an apartment in Manhattan following my law school graduation." (DH Aff ¶ 13). DH also states that "since our marriage in 2004, we have always resided together (and now with our children) continuously at the East 69th Street location." (DH Aff ¶ 13).

3. However, A.B. and D.H. have submitted multiple sworn or certified statements to government agencies, as recently as November 2012, which state that they reside elsewhere, and defendants' motion papers utterly fail to explain these numerous contradictions.

a. Residence of A.B.

4. As referenced in the complaint, A.B. the mother of S.H., stated under oath, in a New York City Board of Elections affidavit, dated November 6, 2012, that she lived at ___ E. 65th Street, New York, N.Y. 10069, that she was registered to vote from this E. 65th Street address and that she had moved to this address within 3 years. A.B.'s voting history record, certified by the New York Board of Elections, which include her November 6, 2012 affidavit, are annexed as Exhibit "1." (Exhibits "1," "2" and "3," and "6" that disclose the identities of A.B. and D.H., are being submitted under seal to preserve their confidentiality.)

5. A.B. has submitted no response whatsoever concerning this affidavit or her residency on defendants' motion to dismiss.

6. D.H.'s only response concerning A.B.'s affidavit to the Board of Elections, is the following statement in the DH Affidavit: "I don't know what my wife submitted in connection with her own voting (or even if she even [sic] voted that day)…." (DH Aff ¶ 14).

7. The overheated rhetoric in the D.H. Affidavit cannot obscure the fact that A.B. has sworn that she resides at a different address than the address set out in the D.H. Affidavit. Defendants make no attempt whatsoever to explain these conflicting sworn statements regarding residency.

8. D.H., who is himself a lawyer, and who is represented by counsel, has submitted a seven-page affidavit, together with dozens of pages of exhibits concerning the residency issue, all purporting to establish his and A.B.'s joint residency at __ E. 69th Street. That he has not

even discussed with his wife her conflicting sworn affidavit concerning her residency is remarkable, and telling, as is the absence of any submission from A.B.

9. A.B.'s voting history record supports the statement in her affidavit that she moved to the __ E. 65th Street address within three years of November 6, 2012. Her voting history record demonstrates that her residence address in the Board of Election records has been the ___ E. 65th Street address *since February 23, 2010.*

b. Residence of D.H. (Voting Records)

10. On November 6, 2012, D.H. signed an affidavit, in which he swore that he resided at ___ Road in Scarsdale, N.Y.

11. The very next day, November 7, 2012, D.H. signed an affidavit in which he swore that he resided at ______E. 69th Street, New York, N.Y., and that his prior address was __ Road in Scarsdale, N.Y.

12. Unless D.H. moved overnight on November 6, 2012, from __ Road in Scarsdale to E. 69th Street, it is impossible that both statements are true.

13. Further, both of these affidavits are inconsistent with the D.H. Affidavit submitted in support of defendants' motion. As quoted above, D.H. states in the Affidavit on this motion that he moved from Scarsdale to an apartment in Manhattan in 1991, and has lived at the East 69th Street address continuously since 2004. (DH Aff ¶ 13).

14. D.H's November 6 and November 7, 2012 affidavits are referenced in the complaint. D.H.'s only response is the following:

> November 6, 2012 (election day) capped a week of significant confusion. The devastation of Hurricane Sandy had occurred only days earlier and radio reports were telling people that they could vote from "other" locations. I don't know what papers I had to sign, but I voted once and only once, in Manhattan, at a polling facility near the Hilton Hotel.

(DH Aff ¶ 13).

15. Again, no response whatsoever is provided regarding the conflicting statements concerning D.H.'s residence in the three D.H. affidavits.

16. Submitted herewith, under seal, are D.H.'s certified voting history record from the Westchester County Board of Elections (Exhibit "2"), and D.H.'s certified voting history record from the New York City Board of Elections (Exhibit"3").

17. Exhibit 2 shows that as of November 6, 2012, D.H. was registered to vote in Westchester County and that this was based on a declared residence at __ Road, Scarsdale, N.Y. The certified voting history record shows that D.H. had been registered to vote in Westchester County, based on the same declared residence in Scarsdale, for many years, and that he had voted in Westchester County in many elections prior to the 2012 election, including in 2004 and 2008, during the period that, according to the D.H. Affidavit, he was living at __ East 69th Street, and also according to the D.H. Affidavit, thirteen and seventeen years, respectively, after he had moved from __ Road, Scarsdale to Manhattan. (DH Aff ¶ 13).

18. The November 6, 2012 affidavit that D.H. does not recall filling out and signing is part of his certified voting history record in Westchester County. It shows that he swore on that date that he resided at __ Road, Scarsdale, New York.

19. It is true that because of Storm Sandy, residents of certain designated New York State counties, which included Westchester County and the five counties in New York City, were allowed to cast their ballots at polling sites other than their regular polling site. A copy of the Executive Order of Governor Andrew Cuomo, dated November 5, 2013, and the accompanying press release, establishing this procedure, is annexed hereto as Exhibit 4.

20. However, as the Executive Order sets out, persons who voted at polling sites other than their regular polling site, were required to vote by affidavit ballot, which was then transmitted to the Board of Elections where the voter is registered to vote.

21. Accordingly, under this procedure, D.H. was permitted to cast his ballot in midtown Manhattan, and submitted his November 6, 2012 affidavit in connection therewith, certifying under oath that he resides at ______ Road in Scarsdale, N.Y. This affidavit ballot was then transmitted to the Westchester County Board of Elections.

22. D.H.'s certified voting history record from the New York City Board of Elections (Exhibit "3"), show that one day later, on November 7, 2012, D.H. registered to vote in New York City, and in connection therewith, submitted an affidavit, in which he swore he resides at the ______E. 69th Street address, and that he had moved there from ___ Road, Scarsdale, N.Y. The affidavit is part of the certified voting history record at Exhibit "3."

23. The DH Affidavit contains nothing whatsoever concerning this November 7, 2012 affidavit submitted to the New York City Board of Elections.

24. D.H.'s certified voting history record from the New York City Board of Elections (Exhibit "3"), show that he has never voted as a resident of New York City.

c. <u>D.H.'s Driver's License</u>

25 D.H. does acknowledge, in a footnote to paragraph 14 of the DH Affidavit that "I have not yet changed my New York driver's license to reflect our East 69th Street address residence." He also states that the __ Road, Scarsdale address was "the home that I lived in when I first got my driver's license," before moving out of that home in 1991. (DH Aff ¶ 13).

26. This means that from 1991 to 2013, *a period of twenty-two years*, D.H. has maintained his residential address as __ Road, Scarsdale, N.Y. on his driver's license, which he now asserts is not an accurate residential address.

27. The New York State Department of Motor Vehicles ("the DMV") requires that holders of New York State driver's licenses notify the DMV *within a maximum of ten days* of a change of address. http:://www.dmv.ny.gov/addr-name.htm.

28. As problematic as such situation would be, this is not a situation where D.H. "merely neglected," for a period of twenty-two years, to comply with a legal requirement that he amend an existing drivers license within ten days of a residence change.

29. Instead, the maintenance of the __ Road, Scarsdale, N.Y. residential address on his driver's license during this period, required repeated, affirmative, certified statements by D.H. that he resided at __ Road, Scarsdale, N.Y.

30. New York State driver's licenses must be renewed periodically. The current requirement is that licenses be renewed every eight years. In connection with driver's license renewals, the license holder must complete and submit a form to the DMV, providing then-current information, including current residence. The license holder must sign the form, certifying that the information provided is correct. (A copy of the current DMV form for license renewal, and the DMV website page that states licenses must be renewed every eight years is annexed as Exhibit "5.")

31. Accordingly, in the twenty-two year period from 1991 to 2013, D.H. has, on multiple occasions, certified on a form submitted to the DMV, that he resides at __ Road, Scarsdale, New York.

32. D.H. fails to offer any explanation as to why he has continued to certify to the DMV, until 2013, that he resides at __ Road, Scarsdale, New York, when he now claims that he has not resided at that address since 1991.

The Legal Significance of these Certified Statements

33. A review of Exhibits "1," "2," "3" show that the affidavits signed by A.B. and D.H. state, right under the signature line for the certification, that the submission of false information to the Board of Elections is a crime, and indeed warn that the submission of false information may result in up to four years prison time. The DMV license renewal form bears a similar statement under the signature line for the certification. The DMV form states that providing false information may be a misdemeanor or a felony. (See Exhibit "5.")

34. It also should be emphasized that A.B. is a physician, and that, most significantly, D.H. is a lawyer. It cannot seriously be asserted that they did not know that they were required, as a matter of law, to provide accurate information concerning where they resided when they completed these affidavits and certifications, submitted to the Boards of Elections and the DMV nor can it plausibly be asserted that they did not know, given the clear and prominent warnings on these forms, that providing inaccurate information is a crime.

35. Accordingly, the sworn and certified statements concerning residency submitted by A.B. and D.H. to the Boards of Election and to the DMV, should be accorded great weight.

Defendants' Bank Accounts

36. In addition, attached as Exhibit "6," and submitted under seal, are checks drawn on two bank accounts – an account in the name of D.H., and an account in the name of A.B.

37. D.H.'s checks have his pre-printed name and below that, pre-printed, the __ Road, Scarsdale, N.Y. address. A.B.'s account checks have just her name pre-printed.

38. Thus, the only address provided on any checks in these two personal checking accounts is the __ Road, Scarsdale address, where D.H. asserts he has not lived in twenty-two years.

According to Defendants' Tax Returns, A.B. Operates a Business at the E. 69th Street Address

39. The portions of defendants' tax returns provided in support of their motion, show that in addition to D.H. and A.B. representing in their returns that they reside at the E. 69th Street address, A.B. also operates a business at the E. 69th Street address. The business, in which she is self-employed, is A___ B____ MD PLLC.. A.B. is an ophthalmologist.

40. Switchboard.com lists the business, A____B____ PLLC, as located at the E. 69th Street address., as well as at the E. 65th Street address that A.B. has provided to the New York City Board of Elections as her residence address since February 2010. (See above, and Exhibit "1.")

41. It is not known what business operations are conducted in connection with A__ B___ PLLC at either the East 69th Street or East 65th Street addresses.

42. However, upon information and belief, the apartment at the E. 69th Street address is a two-bedroom apartment. Given D.H. and A.B.'s financial circumstances, as shown by their tax returns, it would be surprising and not typical that a family of six (a family of five during the period 2011-2012), that includes an infant, lives in a two-bedroom apartment. Depending on the business operations conducted, it would be even more unlikely that a family of five or six would reside in a two-bedroom apartment where the mother is also operating a business.

Defendants' Submissions Do Not Establish Their Residency, or the Residency of S.H.

43. Defendants have submitted self-selected portions of tax returns, phone, electric and cable bills, and credit card receipts.

44. The very limited portions of the tax returns provided list a residence address of __ East 69th Street for A.B. and D.H., and as discussed above, also state that A.B. uses the same East 69th Street as a business address. What these incomplete returns show is that A.B. and D.H. were certifying to the tax authorities that they resided at __ East 69th Street, while in the same period A.B. was swearing to the New York City Board of Elections that she resides at the East 65th Street address, and D.H. was certifying to the Westchester Board of Elections, and to the New York State Department of Motor Vehicles, that he resided at __ Road, Scarsdale.

45. It should be noted that both A.B. and D.H., while swearing that they reside at __ East 65th Street and ___ Road, Scarsdale, respectively, also stated under oath that the __ East 69th Street address is their mailing address. (Exhibits "1" and "2.")

46. This perplexing circumstance is also not addressed in the D.H. Affidavit on this motion. Why would A.B. reside on East 65th Street but maintain a mailing address at a second apartment on East 69th Street, as she stated in her affidavit? Why would D.H. reside in Scarsdale but maintain a mailing address at an East 69th Street apartment, as he stated in one of his affidavits? Does the use of the East 69th Street address as a business address by A.B. have any bearing on this circumstance? Plaintiff does not know.

47. That D.H. has paid bills in connection with the __ E. 69th Street apartment is apparent from the submitted records. However, these records do not show who, if anyone, actually resides in this apartment.

48. The credit card bills submitted by D.H. establish only that he (and/or possibly someone who may be authorized to use his credit card, including perhaps A.B.), has purchased goods and services on the Upper East Side. Such purchases are not probative of residence at the __ East 69th Street address. These purchases could have been made during frequent visits to the

area, such as those to an apartment maintained __ E. 69th Street as a mailing and business address. Alternatively these purchases could have been made by someone residing at another Upper East Side address, such as the one at __ E. 65th Street.

49. Indeed, in this regard, D.H.'s credit card billings shows frequent charges in the vicinity of what Switchboard.com lists as another business address for A.B., A__ B______ MD, which is located on E. 49th Street in Manhattan.

Conclusion

50. The only conclusion that can be drawn from the now-available conflicting information and records is that it is not known where A.B., D.H. or S.H. resided in 2011-2012, nor whether A.B. and D.H. resided together or separately, and if separately, where S.H. resided. Defendants have failed to provide explanations as to why there are numerous conflicting indicia concerning residency, including multiple conflicting statements under oath as to residency by both defendants. Further information is needed.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: New York, New York
September 6, 2013

Marilyn Richter

MARILYN RICHTER