USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JAN 2 2 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

THE NEW YORK CITY DEPARTMENT OF :
EDUCATION,                        :
                                  :
                                  :
              Plaintiff,          :                13 Civ. 3499 (AJN)
                                  :
                                  :
       -v-                        :                MEMORANDUM &
                                  :                     ORDER
                                  :
S.H., *by his parents, D.H. and A.B.,*  :
                                  :
                                  :
              Defendant.          :

------------------------------------------------------------------X

ALISON J. NATHAN, District Judge:

In this action, the New York City Department of Education (the "City") asks the Court to review a New York state hearing officer's decision dismissing as untimely the City's appeal from an order instructing the City to reimburse the private school tuition of S.H., a child with a disability. Before the Court is S.H.'s parents' ("Defendants'") motion to dismiss the City's Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Dkt. No. 8. For the following reasons, Defendants' motion is granted.

## I.      BACKGROUND

Under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1450, a state's federal funding is conditioned on its having policies and procedures in place that are sufficient to provide all children with disabilities a "free appropriate public education" pursuant to an "individualized education program" ("IEP"). 20 U.S.C. §§ 1412(a), (d); Compl. ¶ 5. In New York, local school districts are responsible for providing a free appropriate public

education to qualifying students and for developing, reviewing, and revising those students' IEPs. N.Y. Educ. Law § 4402(d); Compl. ¶ 5.

Both the parent of a student with a disability and the public agency responsible for providing the student's free appropriate public education have a statutory right to an impartial hearing concerning the identification, evaluation, or educational placement of a child or the provision of a free appropriate public education to the child. 20 U.S.C. §§ 1415(b)(6), (f)(1); Compl. ¶ 7. If this hearing "is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the state educational agency." 20 U.S.C. § 1415(g)(1). Either party may then bring a civil action in state or federal court to review the state agency's decision. 20 U.S.C. § 1415(i)(2)(A).

In New York State, the first level of review contemplated by the IDEA is a due process hearing before a district-level Impartial Hearing Officer ("IHO"). N.Y. Educ. Law § 4404(1). The second level of review is conducted by a State Review Officer ("SRO"), who may affirm or modify the IHO's order. N.Y. Educ. Law § 4404(2). An initial hearing before an IHO and an appeal from that hearing are prerequisites to bringing suit in federal court; failure to exhaust these administrative remedies forecloses suit. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004).

Under certain circumstances, the parents of a child with a disability may unilaterally enroll their child in a private school and ask a hearing officer to order the school district to reimburse them for tuition. However, the school district is not required to reimburse the parents for private school tuition if it has otherwise made a free appropriate public education available to the student. 20 U.S.C. § 1412(a)(10)(C); Compl. ¶¶ 10–11.

In this case, Defendants initiated a due process hearing before an IHO, seeking reimbursement for S.H.'s tuition at the McCarton School, a private school for children with disabilities, and for additional services outside of school. Compl. ¶ 12. The IHO issued an opinion granting Defendants reimbursement for the tuition and services for the 2011–2012 school year. This amount totaled more than $130,000. Compl. ¶ 13; D.H. Aff. Ex. 3. The IHO's decision was dated May 1, 2012, but was not distributed to the parties until May 2, when the IHO emailed it to the parties and sent it by first class mail to Defendants. Compl. ¶ 13.

The City appealed the IHO's decision. New York regulations provide that a party aggrieved by an IHO's decision has 35 days to initiate an appeal by personally serving a petition on the opposing party. 8 NYCRR §§ 279.2(b), (c); Compl. ¶ 15. A failure to meet this deadline is grounds for dismissal. 8 NYCRR § 279.13; D.H. Aff. Ex. 5, at 5. If the opposing party cannot be found personally after "diligent search," the petitioner may effectuate service by leaving the petition "with some person of suitable age and discretion" at the respondent's place of residence, "or as otherwise directed by the commissioner." 8 NYCRR § 275.8(a).

The City initially attempted to serve its petition on Defendants' legal counsel at Mayerson & Associates, but a paralegal informed them on May 17, 2012 that Defendants had not authorized the firm to accept service on their behalf. Compl. ¶ 16; D.H. Aff. Ex. 4. The City then tried to serve Defendants at their residence. The City's process server went to the apartment building on East 69th Street where Defendants had told the City they lived, and which Mayerson & Associates said was the address it had on file. Compl. ¶ 17; D.H. Aff. Ex. 2. The process server went to the building twice on June 5, at approximately 1 PM and 7 PM, but Defendants were not home. A doorman at the building said that he had not seen them in "a couple of days." Compl. ¶¶ 18–19. On June 6, the process server visited the building again, and was again unable

to personally serve Defendants.  He left a copy of the City's petition with the doorman, and the City mailed a copy of the petition to the East 69th Street address on the same date.  Compl. ¶ 19.

Defendants asked the SRO to dismiss the City's petition as untimely, and the SRO did so. Compl. ¶¶ 20–21; D.H. Aff. Ex. 5.  The SRO held that the 35-day service period ran from the date that the IHO's decision was issued, not the day that the parties received it by email, so the date on which the City effectuated alternative service—June 6—was one day late.  The SRO also declined to exercise her discretion to excuse the City's untimely service for good cause.  Compl. ¶ 21; D.H. Aff. Ex. 5, at 7.

Then the City, which found the doorman's statement to its process server suspicious, started investigating Defendants' place of residence.  Compl. ¶¶ 22–23.  It found several pieces of evidence allegedly demonstrating that Defendants did not live at the East 69th Street address that they had provided the City.  First, while voting on Election Day in November 2012, S.H.'s father, D.H., stated under oath that he lived at an address in Scarsdale, in Westchester County. Compl. ¶ 24.  He also voted in Scarsdale in 2008, and his driver's license lists the same Scarsdale address.  Compl. ¶ 26.  Additionally, S.H.'s mother, D.B., stated that she lived on East 65th Street while voting by affidavit ballot in November 2012.  Compl. ¶ 27.  The City has "made observations" at the East 69th Street address, the East 65th Street address, and the Scarsdale address, and has not seen S.H. coming or going.  Compl. ¶ 28.  Therefore, the City claims not to know where S.H. actually lives.  Compl. ¶ 29.

The City filed its Complaint in this Court on May 25, 2013.  Defendants moved to dismiss on July 12, 2013, and the motion was fully submitted on September 20.

## II.    DISCUSSION

In its Complaint, the City articulates three grounds for relief. First, it claims that if S.H. resided with his father in Scarsdale during the relevant time period, the IDEA would not oblige the City to provide a free appropriate public education for S.H., and that the IHO's merits determination would therefore have been incorrect. Compl. ¶¶ 66–67. Second, it claims that the SRO's timeliness determination rested on the false premise that Defendants resided on East 69th Street. Had the SRO known that they were living elsewhere, the City's failure to timely serve them would have been excused. Compl. ¶¶ 72–73. Third, the City argues that the SRO's timeliness determination was arbitrary and capricious. Compl. ¶¶ 75–77.

Defendants argue that the Court does not have subject matter jurisdiction over the City's claims, and move to dismiss them on that basis. Def. Br. at 1, 5. They have also submitted voluminous affidavits, photographs, tax returns, and billing records indicating that they and S.H. live at the East 69th Street address.

### A. Legal Standard

"Determining the existence of subject matter jurisdiction is a threshold inquiry," *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc), and "a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it," *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The City bears the burden of demonstrating subject matter jurisdiction by a preponderance of the evidence. *See id.* The Court must accept as true all material allegations in the Complaint, but because "the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it." *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). In considering a motion to dismiss under Rule 12(b)(1), the Court may consider affidavits submitted by the parties and other evidence outside the pleadings. *Makarova*, 201 F.3d at 113.

### B. The Court Will Review the SRO's Decision

A district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Arising-under jurisdiction lies if federal law creates the plaintiff's cause of action or if a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 314 (2005); *see also Gunn v. Minton*, 133 S. Ct. 1059, 1064–65 (2013).

The IDEA creates a federal cause of action for "[a]ny party aggrieved by" the outcome of a state's administrative proceedings. 20 U.S.C. § 1415(i)(2)(A). However, not every claim authorized by federal statute presents a federal question—a narrow exception exists for cases involving an "overwhelming predominance of state-law issues." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 735 (2d Cir. 2007) (quoting *Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 814 n.12 (1986)) (internal quotation mark omitted). In *Bay Shore*, the Second Circuit applied this exception in the IDEA context, concluding that the district court lacked jurisdiction to review an SRO's determination that New York law entitled a disabled child to a one-on-one aide. *Id.* Although the IDEA sets a floor for the benefits that a state must provide, the court reasoned, it does not regulate states' ability "to impose additional requirements on their schools if they so choose." *Id.* The child's entitlement to an aide was governed entirely by state law, so no federal question was presented. *Id.*

6

In *New York City Department of Education v. C.F.*, No. 12 Civ. 3188 (AJN), Dkt. No. 23 (S.D.N.Y. June 20, 2013), a case similar to this one, this Court relied on *Bay Shore* in holding that it did not have jurisdiction over an SRO's timeliness determination. The defendants had argued before the IHO that the City had denied their child a free appropriate public education, and the IHO agreed, in a decision that was distributed to the parties two days after it was issued. The City appealed the IHO's decision, but the SRO dismissed the appeal as untimely, holding that the 35-day period for the City to serve its petition started running when the IHO issued its decision, not when the parties received it. Rather than challenge that holding in state court, the City filed a federal action seeking review of the SRO's timeliness determination. This Court held that it did not have subject matter jurisdiction over the claim, since the questions presented—whether the City's service was timely and whether the SRO abused its discretion in not excusing any untimeliness—"turn[ed] exclusively on interpretation of state regulations." *Id.* at 6. Under the Second Circuit's decision in *Bay Shore*, that meant that although the City's case was brought pursuant to the IDEA, it did not present a federal question.

Defendants understandably rely on *C.F.*, given that the City is asking the Court to review an unfavorable timeliness determination by an SRO. However, this case is different. In *C.F.*, the *only* questions presented concerned timeliness, and those questions were governed exclusively by state law. Here, the City seeks review of the IHO's merits decision in light of new evidence about Defendants' residency that supposedly casts doubt on its obligation to fund S.H.'s free appropriate public education. The City asserts that the IDEA itself, and not just state law, limits that obligation to children whose parents reside in New York City. *See, e.g., Brooks v. Central Dauphin Sch. Dist.*, No. 11 Civ. 1555, 2011 WL 4433285, at *8 (M.D. Pa. Aug. 31, 2011) ("[T]he IDEA only requires a school district to make a FAPE available to a child residing within

7

its district."), *adopted at* 2011 WL 4433284 (M.D. Pa. Sept. 21, 2011). Even if the City is wrong, the question of whether its interpretation of the IDEA is correct would be a sufficient ground for federal jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). In this context, unlike in *C.F.*, the SRO's timeliness determination is not the only issue presented, but rather arises in an action that also involves a federal question. And the new evidence that the City has allegedly discovered concerning Defendants' residency might well bear on the Court's resolution of that question, since district courts may consider "additional evidence presented by the parties" as well as the administrative record. *Jennifer D. ex rel. Travis D. v. N.Y.C. Dep't of Educ.*, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008).

Indeed, in *C.F.*, the Court assumed without deciding that if the City had asked the Court to hold that the IHO's merits decision conflicted with the IDEA—rather than invoking the IDEA's civil suit provision "for the express purpose of reviewing the SRO's timeliness determination"—review of the SRO's decision would have been appropriate. No. 12 Civ. 3188 (AJN), Dkt. No. 23, at 11. An aggrieved party must exhaust state administrative remedies before bringing a federal action under the IDEA, and a failure to do so deprives the district court of subject matter jurisdiction.[1] *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008). Courts have held that "the failure to bring a timely appeal in compliance with the relevant [state] regulations should be equated with failure to bring an appeal at all." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, No. 99 Civ. 9294 (CSH), 1999 WL 980164, at *3 (S.D.N.Y. Oct. 28, 2009); *see also B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, No. 12 Civ.

---

[1] Because this exhaustion requirement is jurisdictional, the Court has an "independent obligation" to determine whether it has been met. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125 (2d Cir. 2011). Some authority suggests that a failure to exhaust is an affirmative defense, not a jurisdictional bar, but that is not the rule in the Second Circuit. *See Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131, 133 & n.3 (2d Cir. 2012) (discussing this issue).

5605 (ER), 2013 WL 4779012, at *6 (S.D.N.Y. Sept. 6, 2013) (collecting cases). Therefore, a district court's exhaustion inquiry depends in part on whether the plaintiff filed a timely appeal in state proceedings. In answering that question, courts have reviewed SROs' timeliness decisions under an "arbitrary and capricious" standard. *E.g.*, *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 440–41 (W.D.N.Y. 2012). As in *C.F.*, the Court will assume that such review is appropriate, because it does not affect the outcome of this case.

### C. The City's Appeal Was Untimely

"In considering whether the [SRO's] decision was arbitrary and capricious, the Court 'must determine whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *T.W.*, 891 F. Supp. 2d at 440 (quoting *N.Y. Dep't of Soc. Serv. v. Shalala*, 21 F.3d 485, 492 (2d Cir. 1994)).

The SRO dismissed the City's appeal as untimely because it was served one day late. For appeals filed by a board of education, New York state regulations require that "[a] copy of the board's notice of petition, petition, memorandum of law and any additional documentary evidence shall be personally served upon the parent within 35 days from the date of the [IHO's] decision." 8 NYCRR § 279.2(c). If the respondent cannot be found personally after diligent search, the board may effectuate service by leaving the required materials "with some person of suitable age and discretion" at the respondent's residence, "or as otherwise directed by the commissioner." *Id.* § 275.8(a). The IHO's decision was dated May 1, 2012 and sent to the parties on May 2. Based on the IHO's conclusion that the 35-day service period ran from May 1, service was due on or before June 5. The City's process server tried to serve Defendants twice on June 5, but was unable to find them at their East 69th Street address. On June 6, after

receiving authorization for substitute service, the City left a copy of its petition with a doorman at that building and also sent a copy by mail. Compl. ¶ 18; Pl. Opp. at 17.

The City first attacks the SRO's determination that the 35-day service period ran from the date of the IHO's decision, and not from the date on which the decision was delivered to the parties. The Court rejected this precise argument in *C.F.*, holding that because the City failed to point to any authority supporting its position, the SRO's interpretation, which is consistent with the plain text of the regulation, was not arbitrary and capricious. No. 12 Civ. 3188 (AJN), Dkt. No. 23, at 12. The City has not cited any additional authority in this case, so the Court will not revisit its earlier holding.

The City also argues that the SRO's refusal to excuse the City's lateness was arbitrary and capricious. Under New York law, an SRO, "in his or her sole discretion, may excuse a failure to timely serve or file a petition for review within the time specified for good cause shown." 8 NYCRR § 279.13. The SRO concluded that the City had not demonstrated good cause for its untimely service. She noted that the City had known since May 17, 2012 that Defendants' law firm was not authorized to accept service on Defendants' behalf, that the City waited "until the last minute" to attempt personal service, and that "difficulties effectuating personal service and the need for substitute service are foreseeable." D.H. Aff. Ex. 5, at 7. In other words, the City's process server should not have expected to be able to find Defendants on the very day that service was due, so the City should not have waited so long to either attempt personal service or arrange for alternative service. The Court cannot agree with the City that this reasoning was arbitrary and capricious. Common sense dictates that dropping by a person's apartment building twice on a weekday is not a foolproof method for encountering that person. It was unreasonable for the City to believe otherwise.

10

The City nonetheless contends that had the SRO known that Defendants were not living at the East 69th Street address that they provided to the City, the SRO would have excused the City's untimely service for good cause.[2] This argument arguably finds some support in *Gagliardo v. Arlington Central School District*, 373 F. Supp. 2d 460 (S.D.N.Y. 2005), in which the district court remanded a case to an SRO after finding that his *sua sponte* decision to dismiss an appeal was premised on a factual misapprehension. In that case, Judge McMahon found that the appeal petition filed by a child's parents was served one day late. However, the SRO had refused to excuse the parents' untimeliness because he believed, incorrectly, that the petition was actually filed "*two and a half months late*." *Id.* at 464. Therefore, the SRO's determination "was predicated on an incorrect assumption," and Judge McMahon had "no reason to believe that he would have taken the same . . . action had he been aware that plaintiff's appeal was only one day late." *Id.* at 461, 465.

In this case, by contrast, the SRO's decision did not depend on a false premise, because whether Defendants actually lived at their East 69th Street address was entirely irrelevant to her good cause analysis. The City contends that Defendants' alleged dishonesty about their place of residence made locating them for personal service difficult. But an essential element of the SRO's reasoning was her conclusion that locating Defendants at the last minute was foreseeably difficult. Therefore, unlike in *Gagliardo*, the Court has every reason to believe that the SRO's decision would be the same had she been apprised of the City's purported uncertainty regarding the Defendants' place of residence.

---

[2] The Complaint asserts unambiguously that "neither parent was residing at the East 69th Street address that they had provided DOE as their residential address." Compl. ¶ 69. The Court must accept this allegation as true, notwithstanding the voluminous evidentiary materials that Defendants have submitted, which appear to contradict the City's assertion. As explained in the text, nothing turns on this factual dispute.

To the extent that the City asks not for remand but instead for the Court to make its own good cause determination, *see* Pl. Opp. at 18–19 (citing federal good cause standards), the Court agrees with the SRO and concludes that, because the City should have expected last-minute personal service to be difficult, greater factual development concerning Defendants' place of residence would serve no purpose. Although the City implies that Defendants "evaded" service, Defendants first provided the City with their allegedly false East 69th Street address on May 17, 2011, more than a year before the City attempted to serve its appeal petition. Pl. Opp. at 2, 11; D.H. Aff. Ex. 2 at 1. Given that New York law allows 35 days for service and authorizes service by alternative means, Defendants would have needed superhuman powers of foresight to anticipate that lying about their address would let them "evade" the City's last-minute efforts to serve them personally. (And that assumes that Defendants knew they would win a due process hearing that the City would appeal.) The Court therefore concludes that the City's pleadings do not establish good cause for its untimely appeal to the SRO.

## III.   CONCLUSION

Because the City's appeal petition was not timely served on Defendants, the City failed to exhaust its administrative remedies, and the Court lacks subject matter jurisdiction over this action. *Cave*, 514 F.3d at 245; *Murphy*, 1999 WL 980164, at *3. Defendants' motion to dismiss is therefore GRANTED. The Clerk of Court is requested to terminate this case.

SO ORDERED.

Dated: January 22, 2014
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

12